```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                      ATHENS DIVISION
```

VILLAGE PARK OFFICE I, LLC,      *

    Plaintiff,                  *

vs.                              *
                                 CASE NO. 3:11-CV-182 (CDL)
FEDERAL DEPOSIT INSURANCE        *
CORPORATION, as receiver for
North Georgia Bank,              *

    Defendant.                  *

O R D E R

Plaintiff Village Park Office I, LLC ("Village Park") leased office space to North Georgia Bank. When the bank failed, Defendant Federal Deposit Insurance Corporation ("FDIC") was appointed as the bank's receiver. Under 12 U.S.C. § 1821(e), FDIC had authority to repudiate the lease agreement under certain conditions, provided that the repudiation was made "within a reasonable period following" its appointment as receiver. 12 U.S.C. § 1821(e)(1)-(2). Village Park contends that FDIC did not effectively repudiate the lease agreement within a reasonable time and seeks to recover from FDIC under a breach of contract theory. FDIC asserts that it did timely repudiate the lease agreement and asks that the Court dismiss Village Park's Complaint. For the reasons set forth below, the Court concludes that it cannot determine as a matter

of law at this stage in the litigation whether FDIC timely repudiated the lease agreement. Therefore, FDIC's Motion to Dismiss (ECF No. 5) is denied.

## MOTION TO DISMISS STANDARD

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Twombly*, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

FACTUAL ALLEGATIONS

Village Park, as landlord, entered a 10-year lease agreement with North Georgia Bank, as tenant, for office space in Athens, Georgia. Compl. ¶ 7, ECF No. 1. On February 4, 2011, the Georgia Department of Banking and Finance closed the bank and appointed FDIC as the bank's receiver. *Id.* ¶ 9. BankSouth assumed North Georgia Bank's deposits and acquired some of its assets by entering a purchase and assumption agreement with FDIC. *Id.* ¶ 10. FDIC gave BankSouth a 90-day option to lease the Village Park office space. *Id.* ¶ 11.

On May 18, 2011, FDIC informed Village Park by letter that BankSouth had declined to assume the lease and that BankSouth would conclude its operations at the leased space on August 3, 2011. Compl. Ex. B, Letter from L. Austin to Village Park (May 18, 2011), ECF No. 1-2. In that letter, FDIC explained that it "has not disaffirmed or repudiated the Lease, and this letter does not constitute a commitment or election by Receiver to do so in the future." *Id.* The letter further stated, "it is likely that [FDIC] will choose to repudiate the Lease as soon as it is able to wind up its operations at the Premises following [BankSouth's] closure of its operations there." *Id.* According to the letter, any "formal repudiation of the Lease" would be communicated to Village Park in writing, and until FDIC "affirmatively elects to disaffirm or repudiate the Lease, if

3

ever, the obligations of the parties under the Lease shall remain undisturbed by the closure of [North Georgia Bank]." *Id.*

On July 8, 2011, FDIC sent Village Park a letter entitled "Repudiation of Office Lease Agreement between Village Park Office I, LLC and North Georgia Bank dated May 7, 2008 and all related agreements." Compl. Ex. C, Letter from FDIC to Village Park (July 8, 2011), ECF No. 1-3; Compl. ¶ 15. The heading of the letter stated: "Effective Date of Repudiation: [DATE]." *Id.* at 1. The body of the letter stated: "The effective date of this repudiation shall be **[FUTURE EFFECTIVE DATE]** (the 'Repudiation Effective Date')." *Id.* at 2. The letter further stated that until the Repudiation Effective Date, FDIC "shall continue to retain all rights of [North Georgia Bank] under the" lease. *Id.*

On August 18, 2011, FDIC sent Village Park another letter regarding "Repudiation of Office Lease Agreement between Village Park Office I, LLC and North Georgia Bank dated May 7, 2008." Compl. Ex. D, Letter from R. Araujo to W. Rogers (Aug. 18, 2011), ECF No. 1-4. The letter acknowledged that the July 8, 2011 letter "did not specify a repudiation date" but stated that the August 18, 2011 letter "will confirm that the repudiation date is August 5, 2011." *Id.* A representative of Village Park responded via email that prior to August 18, 2011, Village Park "did not receive any notice of repudiation that contained an

4

effective repudiation date of August 5, 2011." Compl. Ex. E, Email from W. Rogers to R. Araujo (Aug. 18, 2011), ECF No. 1-5. Village Park sought an explanation for FDIC's contention that it could retroactively assign an effective date of repudiation. *Id.* FDIC responded via email that "the lease was repudiated timely when notice of the repudiatioin [sic] was mailed on on [sic] July 12." Compl. Ex. F, Email from R. Araujo to S. Johnson (Aug. 19, 2011), ECF No. 1-6.

FDIC did not pay Village Park full rent for August 2011, and it paid no rent after August 2011. Compl. ¶ 27. Village Park notified FDIC that FDIC was in default under the lease and that Village Park was exercising its option to terminate the lease. *Id.* ¶ 28. Village Park "substantially mitigated its damages by re-leasing the premises to a" third party, *id.* ¶ 34, but Village Park contends that it will still suffer damages over the life of the lease, *id.* ¶ 41.

## DISCUSSION

Under 12 U.S.C. § 1821(e)(1), once FDIC was appointed receiver for North Georgia Bank, it had authority to "disaffirm or repudiate any contract or lease" to which North Georgia Bank was a party, provided that the FDIC determined that performance of the contract would be "burdensome" and that repudiation would "promote the orderly administration of" North Georgia Bank's affairs. 12 U.S.C. § 1821(e)(1). The law further provides that

5

the receiver "shall determine whether or not to exercise the rights of repudiation under this subsection *within a reasonable period* following [its] appointment."  12 U.S.C. § 1821(e)(2) (emphasis added).  The "reasonable time" limitation begins to run on the date the receiver is appointed.  12 U.S.C. § 1821(e)(2); *accord 701 NPB Assocs. v. FDIC*, 779 F. Supp. 1336, 1339 (S.D. Fla. 1991).

FDIC contends that it repudiated the lease on July 12, 2011 158 days (approximately five months) after it was appointed receiver for North Georgia Bank.  According to the Complaint, though, FDIC did not provide a repudiation effective date in the July 8, 2011 letter, and FDIC did not notify Village Park of an effective date for the repudiation until August 18, 2011—195 days (more than six months) after FDIC was appointed receiver. Compl. ¶ 17.  FDIC asserts that the statute supplies the missing term from the July 8, 2011 letter, which was mailed on July 12, 2011, because the lessor is "entitled to the contractual rent accruing before the later of the date (I) the notice of disaffirmance or repudiation is mailed; or (II) the disaffirmance or repudiation becomes effective." 12 U.S.C. § 1821(e)(4)(B)(i).  FDIC contends that under this rule, the repudiation was effective on July 12.  Based on the allegations in the Complaint and its attachments, however, FDIC had previously informed Village Park that BankSouth would not

6

conclude its operations at the leased space until August 3, 2011. Compl. Ex. B, Letter from L. Austin to Village Park (May 18, 2011), ECF No. 1-2. FDIC had also informed Village Park that it would likely choose to repudiate the lease "as soon as it [was] able to wind up its operations at the Premises" *after* BankSouth closed its operations. *Id.* In addition, FDIC itself asserted that the repudiation date was August 5, 2011, and FDIC acknowledged that it owed at least partial rent for August 2011. Compl. Ex. D, Letter from R. Araujo to W. Rogers (Aug. 18, 2011), ECF No. 1-4. Based on the Complaint and its attachments viewed in the light most favorable to Village Park, therefore, the repudiation could not become effective until the August 18, 2011 letter was mailed. *See* 12 U.S.C. § 1821(e)(4)(B)(i) (stating that a lessor under a repudiated lease is "entitled to the contractual rent accruing before the *later* of the date" the notice of repudiation was mailed or the repudiation became effective).

The next question is whether the Court should find that FDIC's attempted repudiation more than six months after its appointment as receiver is reasonable as a matter of law. In general, "what constitutes a reasonable time" is fact sensitive and "must occur on a case by case basis." *701 NPB Assocs.*, 779 F. Supp. at 1339. The courts have typically declined to find that a delay of six months is reasonable *as a matter of law*

7

under 12 U.S.C. § 1821(e)(2). *E.g., id.* (denying motion to dismiss where FDIC waited six months to repudiate a lease because "what constitutes a reasonable time" is fact sensitive and "must occur on a case by case basis"); *NCB Mgmt. Servs., Inc. v. FDIC*, Civil Action No. 11-00700 (CKK), 2012 WL 468365, at *5 (D.D.C. Feb. 14, 2012) (declining to dismiss case where FDIC waited six and a half months to repudiate contract because question whether FDIC's attempted repudiation was effective "must await further development of the factual record"); *cf. Accardi Endeavors, LLC v. FDIC*, No. 8:10-cv-839-T-26EAJ, 2010 WL 3123085, at *4 (M.D. Fla. Aug. 9, 2010) (denying motion to dismiss because "the question of reasonableness is a factual dispute best left for a determination on the merits at a different stage in the proceedings").

In this case, according to the allegations in the Complaint and its attachments, FDIC knew in mid-May 2011 that BankSouth would conclude its operations at the leased space in early August and that FDIC would likely repudiate the lease, yet it waited three months before sending Village Park a repudiation notice that contained an effective date. The Court cannot, without further development of the factual record, find that FDIC's attempted repudiation was reasonable. Based on the present record, therefore, the Court declines to find as a matter of law that FDIC's attempted repudiation was timely under

8

12 U.S.C. § 1821(e)(2). Accordingly, FDIC's motion to dismiss is denied.

CONCLUSION

For the reasons set forth above, FDIC's Motion to Dismiss (ECF No. 5) is denied. The stay of discovery and deadlines contained in the Court's Rules 16 and 26 Order of March 6, 2012 is hereby lifted. The parties shall confer and submit a joint proposed scheduling order in compliance with the Court's Rules 16 and 26 Order. The proposed scheduling order is due on or before May 23, 2012.

IT IS SO ORDERED, this 24th day of April, 2012.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE