IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

VILLAGE PARK OFFICE I, LLC,      *

    Plaintiff,                   *

vs.                              *      CASE NO. 3:11-CV-182 (CDL)

FEDERAL DEPOSIT INSURANCE         *
CORPORATION, as receiver for
North Georgia Bank,              *

    Defendant.                   *

_____

O R D E R

Plaintiff Village Park Office I, LLC ("Village Park") leased office space to North Georgia Bank. When North Georgia Bank failed, Defendant Federal Deposit Insurance Corporation ("FDIC") was appointed as the bank's receiver. Under 12 U.S.C. § 1821(e), FDIC had authority to repudiate the lease agreement under certain conditions, provided that the repudiation was made "within a reasonable period following" its appointment as receiver. 12 U.S.C. § 1821(e)(1)-(2). Village Park contends that FDIC did not effectively repudiate the lease agreement within a reasonable time and seeks to recover from FDIC under a breach of contract theory. FDIC seeks summary judgment on this issue, asserting that it did timely repudiate the lease agreement. Based on the facts viewed in the light most favorable to Village Park, a genuine fact dispute exists on the question whether FDIC repudiated the lease

agreement within a reasonable time after being appointed receiver. Therefore, FDIC's Motion for Summary Judgment (ECF No. 25) is denied.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Village Park, the record reveals the following. Unless otherwise noted, the facts are undisputed for purposes of FDIC's summary judgment motion.

Village Park, as landlord, entered a lease agreement ("Lease") with North Georgia Bank, as tenant, for office space in Athens, Georgia. The Georgia Department of Banking and Finance closed North Georgia Bank on February 4, 2011, and FDIC was

2

appointed as the bank's receiver.  FDIC notified Village Park that North Georgia Bank had been closed and that FDIC had been appointed as the bank's receiver.

When North Georgia Bank was closed on February 4, 2011, another bank, BankSouth, agreed to assume certain assets and liabilities of North Georgia Bank through a purchase and assumption agreement with FDIC.  Under that agreement, BankSouth had an option to assume North Georgia Bank's Lease with Village Park.

BankSouth officially notified FDIC on May 4, 2011 that it would not assume the Lease.  Two weeks later, on May 18, 2011, FDIC officially notified Village Park of BankSouth's decision. FDIC informed Village Park that BankSouth intended "to conclude its operations at the Premises on August 03, 2011."  Def.'s Mot. for Summ. J. Ex. J, Letter from L. Austin to Village Park (May 18, 2011), ECF No. 25-11.  In its letter, FDIC explained that it "has not disaffirmed or repudiated the Lease, and this letter does not constitute a commitment or election by [FDIC] to do so in the future."  *Id.*  The letter further stated, "it is likely that [FDIC] will choose to repudiate the Lease as soon as it is able to wind up its operations at the Premises following [BankSouth's] closure of its operations there."  *Id.*  According to the letter, any "formal repudiation of the Lease" would be communicated to Village Park in writing, and until FDIC "affirmatively elects to

disaffirm or repudiate the Lease, if ever, the obligations of the parties under the Lease shall remain undisturbed by the closure of [North Georgia Bank]." *Id.*

An FDIC employee, Laura Austin ("Austin"), was responsible for reviewing North Georgia Bank's Lease with Village Park to determine whether it could be terminated or required repudiation. After Austin analyzed the Lease, she determined that the Lease should be repudiated. To determine the repudiation date, Austin had to find out when BankSouth would conclude its operations at the leased premises and how much additional time, if any, FDIC would need to clear out the space. Austin requested the vacate date from a separate FDIC department in June 2011; she received a response from her FDIC colleague several weeks later. Austin prepared a "repudiation case," which was sent to FDIC's legal department on June 23, 2011. The legal department approved the repudiation case on July 6, 2011, and FDIC's senior management approved the repudiation case on July 8, 2011.

Austin prepared a formal notice of repudiation on July 8, 2011 and mailed it to Village Park on July 12, 2011. The letter stated that FDIC had elected to repudiate the lease. Due to an oversight by Austin, however, the letter did not contain an effective date for the repudiation. The heading of the letter stated: "Effective Date of Repudiation: [DATE]." Def.'s Mot. for Summ. J. Ex. N, Letter from FDIC to Village Park (July 8, 2011),

ECF No. 25-15.  The body of the letter stated: "The effective date
of this repudiation shall be **[FUTURE EFFECTIVE DATE]** (the
'Repudiation Effective Date')."  *Id.* at 2.  The letter further
stated that until the Repudiation Effective Date, FDIC "shall
continue to retain all rights of [North Georgia Bank] under the"
lease. *Id.*

It is undisputed that Wesley Rogers ("Rogers"), one of the
owners of Village Place, did not contact Austin about the letter.
According to Rogers, he assumed based on his prior dealings with
FDIC that Village Place would receive another letter that
contained a repudiation date.  Pl.'s Resp. to Def.'s Mot. for
Summ. J. Ex. G, Rogers Dep. 212:11-16, ECF No. 27-7.  Village
Place did receive another letter; on August 18, 2011, FDIC sent
Village Park a letter entitled "Repudiation of Office Lease
Agreement between Village Park Office I, LLC and North Georgia
Bank dated May 7, 2008."  Def.'s Mot. for Summ. J. Ex. U, Letter
from R. Araujo to W. Rogers (Aug. 18, 2011), ECF No. 25-22.  The
letter acknowledged that the July 8, 2011 letter "did not specify
a repudiation date" but stated that the August 18, 2011 letter
"will confirm that the repudiation date is August 5, 2011." *Id.*
Rogers responded via email that prior to August 18, 2011, Village
Park "did not receive any notice of repudiation that contained an
effective repudiation date of August 5, 2011."  Def.'s Mot. for
Summ. J. Ex. V, Email from W. Rogers to R. Araujo (Aug. 18, 2011),

ECF No. 25-23. Village Park sought an explanation for FDIC's contention that it could retroactively assign an effective date of repudiation. *Id.* FDIC responded via email that "the lease was repudiated timely when notice of the repudiatioin [sic] was mailed on on [sic] July 12." Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. M, Email from R. Araujo to S. Johnson (Aug. 19, 2011), ECF No. 27-13.

It is undisputed that Village Park knew that BankSouth would vacate the leased premises on August 3, 2011. It is also undisputed that BankSouth actually vacated the leased premises on August 3, 2011, and BankSouth coordinated the move with Village Park. There is evidence, however, that Village Park did not know when *FDIC* would vacate the premises until it received FDIC's second repudiation letter on August 18, 2011. Specifically, Rogers testified that while he wanted to market the leased premises to find another tenant before he received the second repudiation letter from FDIC, he could not market it to companies that he did not control until he knew when the property would be available based on the repudiation date. Rogers Dep. 88:20-89:2; *id.* at 92:1-8 (stating that Village Park could not effectively market the lease until mid-August). Rogers did show the leased premises to one company, but that was a company he controlled and with whom he had flexibility on a move-in date. *Id.* at 89:3-12. According to Rogers, it was not until Village Park received the

August 18 repudiation letter that Village Park began negotiating with a potential tenant regarding the leased premises. Village Park officially terminated the Lease in September 2011 and entered a lease with a new tenant.

DISCUSSION

When FDIC was appointed receiver for North Georgia Bank, it had authority to "disaffirm or repudiate any contract or lease" to which North Georgia Bank was a party, provided that FDIC determined that performance of the contract would be "burdensome" and that repudiation would "promote the orderly administration of" North Georgia Bank's affairs. 12 U.S.C. § 1821(e)(1). FDIC was required to "determine whether or not to exercise the rights of repudiation . . . *within a reasonable* period following [its] appointment." 12 U.S.C. § 1821(e)(2) (emphasis added). "[T]he 'reasonable time' limitation begins to run from the date the receiver is appointed. *701 NPB Assocs. v. FDIC,* 779 F. Supp. 1336, 1339 (S.D. Fla. 1991) (citing 12 U.S.C. § 1821(e)(2)).

In this action, it is undisputed that FDIC was appointed receiver for North Georgia Bank on February 4, 2011. It is also undisputed that FDIC knew on May 4, 2011 that BankSouth declined to assume the Lease. It is undisputed that FDIC did not attempt to repudiate the Lease until July 12, 2011—five months after FDIC was appointed receiver and two months after FDIC knew that BankSouth declined to assume the Lease. A genuine fact dispute

7

exists as to whether FDIC effectively repudiated the lease prior to August 18, 2011—six months after FDIC was appointed receiver and three months after FDIC knew that BankSouth declined to assume the Lease. As discussed above, although Village Park knew when BankSouth planned to vacate the leased premises, there is evidence that FDIC did not, prior to August 18, 2011, adequately communicate to Village Park when *FDIC* planned to vacate the leased premises. Under these circumstances, the Court finds that a genuine fact dispute exists on the question whether FDIC repudiated the Lease within a reasonable time following its appointment as receiver for North Georgia Bank.[1]

CONCLUSION

For the reasons discussed above, FDIC's Motion for Summary Judgment (ECF No. 25) is denied.


IT IS SO ORDERED, this 26th day of March, 2013.

                              S/Clay D. Land
                                CLAY D. LAND
                            UNITED STATES DISTRICT JUDGE


---

[1] At this time, the Court finds it unnecessary to decide the question whether the FDIC executes or approves a lease within the meaning of 12 U.S.C. § 1821(d)(2) by failing to repudiate the lease within a reasonable time after being appointed receiver.